Good morning, Your Honor. It's Kirk Kennedy for Mr. Kinzler, counsel. In September of 2003, Mr. Kinzler and I obtained a default judgment on his behalf in the District Court in Nevada for in excess of $10 million. In 2004, we learned for the first time that Southwest called Rock, one of the defendants in the action of the two defendants, had a commercial liability policy in effect between March 97 and March 98, and with Calvert Insurance, and that was the first time that we had discovered that. So I sent a demand to Calvert, to their counsel. They sent a letter back, which is part of the record, denying coverage. And I thereafter filed a declaratory relief action in the District Court and Federal Court to attempt to have a court determine whether Calvert should pay on this policy or not. The central, one of the central issues that Judge Jones in the District Court in Las Vegas had relied on, I believe, was that what standing did Mr. Kinzler have against this policy so many years later after the events in question? The core of the case was October 1997, a real estate transaction between Mr. Kinzler and Robert Ford and his company Southwest called Rock, a deal that went bad and ultimately resulted in years of litigation. But that was the core foundation of why we're even here and whether or not Calvert has any liability in this matter was that breach of contract that occurred in 1997, a breach which has been agreed to, in a sense, by the District Court in Las Vegas, by the State Court, by the way of the default judgment. There's certainly no claims or defenses that can be made against the case at this time from Southwest called Rock or Mr. Kinzler. Could I ask you a question? Yes, sir. If you do have standing, do you derive it basically on the same footing that the insured has or do you somehow, are you somehow bound by or entitled to different treatment? Well, you'll note in the brief that I had to really search to find cases all over the West. I have Arizona cases, California cases. Nevada did not have a lot of cases on this. And our position is that Mike Kinzler did not have a right to value in this case until he got that default judgment. And with that right to value, he then had an ability to pay to present it to Calvert, that the purpose of the Calvert policy was not to benefit Southwest called Rock directly, but to pay its damaged claims. You may have missed the thrust of my question. My question is, if you have standing to pursue this claim, aren't you subject to the same kind of time constraints in terms of notice to the insurance company? Don't you take the case warts and all, or as they say more elegantly, come on, Ray? I like the first one better. I think you're right. We do take it in the place of the insured. But I've cited cases that state that there are other considerations here, issues of prejudice to Mr. Kinzler, to his position, and this issue of whether he had any rights to value. He had no rights to value to this policy until he had obtained that default judgment, which was still years later. Unfortunately, I agree. Calvert never knew this happened. When I sent that letter to Calvert Insurance, that was the first time they heard about it. They probably freaked out. There's a $10 million judgment, and what are we going to do? And I certainly understand their position. But if we say that Southwest called Rock failed, which they did, they failed miserably and did not at all notify Calvert, hey, we got this lawsuit going on, you guys should know about it, there could be a potential claim. Southwest called Rock never did that. But to do that, then, is to essentially sanction all the harm that it caused Mr. Kinzler. I mean, he had suffered enormously. There's a prejudice standard that I believe this Court can look at as to what happened and his damage. But he's left with nothing. He has no ---- Suppose they had been uninsured. Fair point. I've had cases like that. I have judgments in my office for large judgments, and they're worth the sheets of paper that they're printed on. That's all they're worth. So your client would have suffered in that circumstance. True. But here's the difference is we have a policy that we believe that under the policy provisions he does have coverage. There's a coverage section B. Suppose he's uninsured. Then there it is. But that's not the case. What happened to Southwest? Southwest called Rock during the litigation in 2000 or 2001, filed bankruptcy in Las Vegas, and their bankruptcy petition was thrown out in 2001. They either didn't comply or whatnot, but the Federal Bankruptcy Court threw it out, and it became a defunct corporation. So there were no hard assets for me to go after and try and collect on. All we had left was the discovery that, hey, there's a commercial idea. Would there have been some way to resurrect the bankruptcy by involuntarily forcing Southwest into it and claiming as a creditor that this is an asset that the trustees got to reel in and split up among the creditors? Claiming the policy as an asset of the estate. Fair point. And I don't do a lot of bankruptcy work, and that was not something that we had even focused on. I mean, the default judgment came down in 2003, and it did not occur to me that could we reopen the bankruptcy case, which was dismissed. I have another question. You just mentioned the date, and I've been sitting here puzzling through it. The default judgment was entered in your client's favor in September 2003, and it wasn't until a year later that notice was given to this defendant. Am I right about that or wrong about that? I'm a little shy of a year, but many months. Approximately. Well, September and September. So it was almost a year later. So even if your opportunity didn't ripen until you received the default judgment, and even if you have standing, if all the other things are met, why is that timely notice under this policy? We didn't find out. It's not as soon as practicable. Fair, but we didn't know about the policy in 2003 when I got the default judgment. Had I known then, I could have immediately submitted it to him. It might still be the same defenses, but it would have been as soon as practical after the default. We didn't find out about the policy's existence until later into 2004. Mr. Kinsler found it, brought it to my attention, and we thought about whether, well, maybe this policy would apply, and we found out there was a coverage period that includes the window of time when the parties actually contracted, which is October 1997. Now, I know Judge Jones in the district court said, well, look, Kennedy, even if you got a claim, your basis is that a malicious prosecution argument when Kinsler, I mean, when Mr. Southwest-Colorado filed their suit in October 1998, even then, it's outside the coverage window, and that was an argument that was made by the district court in its order, that even if we had a claim, there's no basis, it's outside the window. But what I would submit is that the entire reason we're here was because the contract was breached in October 1997. Essentially, there were two contracts. The second one, we proved, and I had an expert affidavit, that it was a forgery. And we were going on that with our counterclaims, and then essentially Mr. Ford and Southwest-Colorado drug the case out, and there were bankruptcy filings, and here we are 2003, we finally got a default judgment against them. But we would contend for purposes of determining coverage that the October 1997 date within the coverage window of the Calvert policy is the crucial setting, not when Southwest-Colorado filed its lawsuit in October of 1998, a year later. Because that is the core, that is the essence of why we're here, and that's what we would submit on that. But if there are no other questions, I'll leave it there. Oh, you know, I don't know whether the bankruptcy route would have done any good or not, but I always tell my law clerks, you ought to take bankruptcy law, because there are amazing ways to skin cats through the bankruptcy laws in courts that just don't appear, you know, if you don't know anything about it. And that's a fair point. I'm not sure how the court, Judge Regal or Judge Markell would have addressed that back in Las Vegas in the bankruptcy court. I'm not sure. That's a fair point. I thank you. Thank you. You'll have some time left for rebuttal if you want to use it. Ms. McCann. Good morning, Your Honors. May it please the Court, my name is Pamela McCann. I represent Calvert Insurance Company. Calvert Insurance Company requests the Court affirm the judgment on three grounds, each of which are independent basis for the judgment to be affirmed. The first one being Mr. Kinsler has no right to bring a direct action against Calvert Insurance Company. He has no assignment from the insured to bring an action under the policy. There is no statute permitting such right in Nevada. And third, he has no privity of contract with Calvert Insurance Company. Nevada law succinctly states that a third party claimant such as Mr. Kinsler has no action against a tortfeasor's liability carrier because they have no contractual relationship. That's the Gunny v. Allstate opinion. That is a Nevada Supreme Court opinion from 1992. There are some exceptions, but none of them was attached here, right? Correct, Your Honor. Counsel, I confess I have a question. I know that at our request you had provided a lot of pages when there was a request for the policy. What was conspicuously absent was what you typically have in a contract. I mean, I used to practice a lot of law, and I've never seen policy that doesn't have such standard provisions, for example, as a page that says these are the parties, and a signature page, and importantly for this purpose, a page that says choice of law as, you know, this is insurance company, isn't it? Yes. And the policy really consisted simply of all these riders that were attached? I believe I provided the declarations page, which would identify the insured, and obviously Calvert Insurance Company is the... Okay, go ahead. It was puzzling, I will tell you. Okay. And I have submitted to the court that the policy file with Calvert is not complete. However, what is missing are endorsements that have no bearing to the issues on IPO. Mr. Kinsler argued in his opening brief that he is a third-party beneficiary to the contract, so therefore he has a right to bring this action. What he is is a third-party claimant who has incidental benefits, not intended express benefits under the contract. As a third-party beneficiary, he would have a judgment paid on his behalf, rather than have a judgment paid to him. So he is a third-party claimant. But let's say even if he is a third-party beneficiary, Nevada law shows that he would have to take, subject to the defenses to the policy, such as timely notice of service of a suit. That is the Gibbs v. Giles opinion, 96 Nevada 243, Nevada Supreme Court opinion. Even more on point is a Ninth Circuit decision, Fireman's Fund v. Kennedy, which had the exact same situation as we have here. A third-party claimant obtained a judgment, brought an action under the policy, and said, well, I don't have to comply with the conditions preceding to timely notice of the suit because I'm not part of the agreement. And the Ninth Circuit would take the policy as it stands if you are a third-party beneficiary or if you have an assignment under the policy. And that's just it, is that taking the five-and-a-half-year delay that we have from when Mr. Kinsler served, his complaint against Calvert's insured, is, as a matter of law, unreasonable. Because the policy requires, before you can bring an action against the company, before you can have even potential coverage, you have to provide reasonable notice after service of a suit. That was not provided here. This Court in the S.B. Corporation v. Hartford case found that less than a year was unreasonable under the circumstances. And, obviously, five-and-a-half years after service of the lawsuit is unreasonable. What's the prejudice to your client from the delay, or does there have to be any under Nevada law? Under Nevada law, there is not a requirement for prejudice, and that is supported in all the cases that the S.B. Corporation v. Hartford case, which came out of this Ninth Circuit, recognized. And the prejudice would be simply that it had no involvement and it could not defend against a lawsuit on the merits. And now it is faced with a default judgment that may or may not be based on true facts and circumstances under the law. The last point, which is one of actual coverage that Mr. Kinsler has to establish if he is entitled to bring an action against Calvert. I'm sorry, your voice dropped. He is what? He has to provide evidence of actual coverage under the policy. And my understanding in the trial court and in the briefing to the appellate court that the basis of Mr. Kinsler's claim against Calvert is that he sued for abuse of process, which could be a malicious prosecution, personal injury offense, which would potentially be found to be covered under coverage Part B to the Calvert policy. Today, I heard Mr. Kinsler's the basis for why he's here is breach of contract during the policy period. But yet that's not what the policy provides coverage for. The coverage part that apparently he was seeking coverage for is malicious prosecution, a personal injury offense that must take place during the Calvert policy period. And the malicious prosecution, personal injury offense, is the filing of an action that is also subject to abuse of process to the defendant. And that occurs for coverage purposes when the actual action was filed, whether or not it ends up in a favorable termination to the defendant or not. But the actual cause offense is when the lawsuit is filed. And in this case, the undisputed material facts state, demonstrate that that occurred on October 26th, 1998. The Calvert policy expired seven months earlier, on March 10th, 1998. As a matter of law, interpreting the Calvert policy under coverage Part B and under the case law cited in our briefs, there is no actual coverage as a matter of law. So therefore, Calvert respectfully requests the Court affirm the judgment. And if you have any questions, I'll be more than happy to answer. I don't believe that we do. Thank you. Thank you. Mr. Kennedy, did you wish to use some rebuttal? Just briefly. Just to respond to a couple of points. The reason the lawsuit we had filed against Calvert wasn't bringing Calvert in the action as a co-defendant, alleging some sort of negligence or something like that. If I sued somebody on an auto accident, I wouldn't also sue Allstate, their automobile insurance carrier. I think that's what the Nevada law says. We didn't do that. The only reason we brought this action was a declaratory relief action to have a judicial determination as to whether this policy applies, Mr. Kennedy, or not. And that was the sole purpose of the action. So I believe it's also authorized under the policy itself. In the excerpts of record on the appellant side, page 27, there's a paragraph 3. It talks about legal action against Calvert. And it does say a person may sue us to recover on an agreed settlement or on a final judgment obtained after actual trial. This was a default judgment, but it was a default because we had announced already a calendar call and pre-trial. Mr. Ford did not appear. No one passed out this photograph. But who does it say can sue? Yes. Yes, it is right to sue. Who can sue under that provision you've just quoted, recited? It says basically a person. Well, it doesn't say. It doesn't say a third party. It just says a person. An organization may sue us to recover. So that implies a third party. A third party potential claimant may sue to recover on some sort of settlement or judgment obtained. So by the very terms of the policy itself, it does at least imply that there may be situations just like Mr. Kensler, where he's a third party beneficiary to this policy. Why wouldn't that most normally be read to mean the insured? Well, I think it can be read to include the insured as well as third parties. The policy itself doesn't say. It doesn't say the insured may sue only. It says anyone who may have a claim under this policy may file a suit if it follows through these steps. I mean, that's what the policy seems to be talking about. What's your answer to the claim that the event that forms the basis of your lawsuit was on October 26, 98, and the policy had already expired on March 10 of 98? This is what I was trying to say in my opening remarks, is that the whole reason for this case being, the existence of it, was the breach of contract that occurred in October 97. The policy itself does not provide coverage for breach of contract. We're not here claiming breach of contract. There's no way I can get at the policy. It's the personal injury, the malicious prosecution. But what I'm trying to focus the court on is that our reason for being was because of what happened in October 97. I assume. And then that's, everything sort of flows from that. And that's where I'm coming from. So with that, I will submit. I appreciate your time today. Thank you so much. Thank you. We appreciate the arguments that both of you have presented. The case just argued is submitted. And for this morning's session, we stand adjourned.
judges: Trott, Graber, Shadur